SAMUEL E. BOLLES, Appellant, *v.* WILLIAM SCHEER, Respondent.

**Master and servant — contract of employment — compensation of salesman consisting in part of share of net profits — inventory — charges of depreciation of stock against profits for year — effect of evidence that such charges were not made in good faith — order of reference cannot be reviewed upon appeal from final judgment.**

1. In arriving at the net profits of a business for the purpose of determining the compensation of the plaintiff, a salesman, which compensation was in part dependent thereon, defendant charged against such profits sums which represented depreciation during the year of the market value of the stock of goods on hand. *Held,* that in view of the business practice of taking an annual inventory on which the goods on hand appear at the then prevailing value, this custom must be regarded as being contemplated by the parties when this contract was made.

2. Where there was evidence, as in this case, from which an inference might be drawn that the charges made for such depreciation were not made in good faith, it was the duty of the court to pass upon that question.

3. An order of reference is not one which necessarily affects the final judgment and hence cannot be brought up for review on an appeal from the final judgment in the action in which it was granted. (Const. art. VI, § 9; Code Civ. Pro. §§ 190, 191, 1316.)

*Bolles* v. *Scheer,* 173 App. Div. 967, reversed.

(Argued October 15, 1918; decided January 7, 1919.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 25, 1916, unanimously affirming a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Robert H. Elder* and *Otho S. Bowling* for appellant. In estimating net profits, depreciation charges are known and proper only in respect of property like machines,

tools and plant, which are actually used in the course of production and manufacture, and which, by reason of such use, must be continually inspected and repaired, from time to time partially renewed, and ultimately replaced altogether, undergoing thus a diminution in value that adds to the cost of production. Depreciation is an operating expense. Such charges are unknown and never proper in respect of stock-in-trade as a provision against probable losses on sales, in future, which, if they ever occur, will be due to fluctuation in prices, and will be actually met, realized, and precisely determined to the very penny, by such sales of merchandise when they actually occur. (*Jennery* v. *Olmstead*, 36 Hun, 536; affd., 105 N. Y. 654; *Emery* v. *Wilson*, 79 N. Y. 78; *Paine* v. *Howells*, 90 N. Y. 660; *Eyster* v. *Centennial Board*, 94 U. S. 500; *Daintry* v. *Evans,* 148 App. Div. 275; *Matter of Gerry,* 103 N. Y. 445; *Boisnot* v. *Wilson,* 109 App. Div. 569; *Amsden.* v. *Dunham,* 78 App. Div. 33; *Thorn* v. *Breteuil,* 86 App. Div. 405; *Gray* v. *Darlington,* 82 U. S. 63; *Dent* v. *Tramways Co.,* 16 Ch. Div. 344.) Bolles and Scheer used the terms " profits " and " net profits " in their ordinary meaning, viz., the excess of the gross earnings over the expenditure defrayed in producing them, and had in mind " trading " or " current " annual profits. (*Union Pacific R. R. Co.* v. *U. S.,* 99 U. S. 402; *St. John* v. *Erie Ry. Co.,* 21 Fed. Cas. 167; 89 U. S. 136; *Mobile* v. *Tenn.,* 153 U. S. 486; *Jones* v. *Commonwealth,* 69 Penn. St. 137; *Vermont* v. *Vermont Central,* 50 Vt. 500; *Maloney* v. *Love,* 11 Colo. App. 288.)

*Malcolm R. Lawrence, Parker V. Lawrence* and *Ephraim A. Karelsen* for respondent. The entries were not " offsets from net profits " on account of " estimated depreciation," present or future, but were necessary and proper adjustments in connection with the preparation of the inventories and stock taking to ascertain the

actual cost value to respondent of the merchandise on hand. No question as to " depreciation " is presented in this case. (*Jennery* v. *Olmstead,* 36 Hun, 536; 105 N. Y. 654.)

ANDREWS, J. The defendant is a dealer in jewelry. He made a contract with the plaintiff, who was a jewelry salesman, that during each of the years 1906 and 1907 he should pay the latter for services a salary, a percentage on the gross sales and a share in the net profits of the business. For those years Bolles drew as his share $5,000 and $1,000, respectively, but he claims that the net profits were larger than the sums reported to him; that he was unaware of the fact at the time, and he now seeks to recover the difference between the amount actually paid him and what he would have received if his share had been computed upon the proper basis, or substantially $8,000.

The following inferences might fairly have been drawn from the evidence. Upon their face the books of the defendant showed about $86,000 net profits for 1906 and $41,000 for 1907. These amounts were arrived at by charging against the net profits for 1906 the sum of $14,000 and against the net profits for 1907 the sum of $59,000. These sums, it is said, represented depreciation during the year in the market value of the stock of goods on hand, and the referee seems to base his conclusion upon the proposition that the plaintiff offered no evidence that such a deduction was fictitious or unreasonable.

The claim of the plaintiff is that in any event such a deduction should not have been made. He says that in a case where the amount of net profits of the business accruing from year to year measure the compensation of an employee, such compensation is not to be increased or diminished because at the time when it is computed through fluctuations in the market, the market value of the merchandise or stock on hand has varied from its

cost price, or the price at which it was inventoried at the beginning of the year. Under such a contract the inventory values of merchandise ordinarily taken at the beginning and end of each business year have no importance. Profits as understood in relation to such contracts are the result of a completed transaction, a purchase and a sale. Until the sale is finally made there is neither a profit nor a loss. In determining for the purposes of such a contract whether net profits have been made, the goods on hand need not be considered. As against the profits resulting from actual sales, there must be charged the expenses of the business and depreciation, using the word "depreciation" with reference to the physical condition of the property and as connoting a permanent physical change which reduced its value. There must be subtracted also any losses from business actually conducted. The result is the net profits upon which the employee's compensation is to be computed.

The majority of the court do not agree with this contention. They believe in view of the business practice of taking an annual inventory on which the goods on hand appear at the then prevailing value that this custom must be regarded as being contemplated by the parties when this contract was made.

We are all of the opinion, however, that such being the rule, the facts presented in this case require a determination by the referee of the question as to whether the charges of $14,000 and $59,000 respectively represented a fair allowance for depreciation for the years 1906 and 1907, and were made in good faith. There is evidence from which an inference to the contrary might be drawn.

The defendant's son, himself, had prepared the inventory. In this inventory he had set down presumably the actual value of the merchandise with due recognition of any existing depreciation. After making such an inventory, and thus affixing his own values, he

further deducted a large sum. In regard to the $14,000 item, the entry made under his direction states: "This is done in order to cover prospective decrease in price." Apparently the $59,000 entry was made in the same form. At one time the defendant, himself, stated that these entries were to take care of future depreciations. An another time he stated it was a matter of charging depreciation on stock. At still another, the defendant's son in the latter's presence explained to the plaintiff that they were breaking up manufactured stock and so presumably the stock was less valuable than had been supposed, but this conversation was in 1910, some three years after the plaintiff became entitled to a percentage on the net profits of 1907.

In view of all these facts, the learned referee should have passed upon the question as to the good faith of the deductions as made.

We are asked to review an interlocutory order of the Appellate Division, affirming an order of reference. We have not the power to do so. No appeal may be taken as of right from such an order. (Constitution, article VI, section 9; Code of Civil Procedure, sections 190, 191.) The Appellate Division might have permitted such an appeal but it did not. (Code, section 190, as it stood in 1916.) But this is not an appeal from such an order. Under section 1316 of the Code, an appeal from a final judgment brings up for review any intermediate order specified in the notice of appeal which necessarily affects the final judgment and which has not already been reviewed. Therefore, asuming that the appellant could appeal as of right from the final judgment in this case, on such an appeal he could review any intermediate order necessarily affecting the final judgment. This appeal is not of right. It is an appeal taken under an order of Chief Judge BARTLETT, permitting the same under the provisions of subdivision 2 of section 191 of the Code. Such an order permits an

appeal to be taken with the same force and effect as if the appeal were one of right, and when so taken section 1316 of the Code applies to it.   But an order of reference under the authorities is not one which necessarily affects the final judgment.   (*Van Marter* v. *Hotchkiss,* 4 Abb. Ct. App. Dec. 484; *Bloom* v. *National United Benefit Savings & Loan Company,* 81 Hun, 120; affd., 152 N. Y. 114; *Roslyn Heights Land Co.* v. *Burrowes,* 22 App. Div. 540.)

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, CARDOZO and POUND, JJ., concur; CHASE and MCLAUGHLIN, JJ., concur in result, but hold that an order directing a reference in a case where the parties are entitled to a jury trial as matter of right necessarily affects the final judgment within the provisions of section 1316 of the Code.

Judgment reversed, etc.