In the Matter of RUSSELL B. MARCHANT, as Trustee in Bankruptcy of BEAR TRACTORS, INC., Appellant and Respondent, against MEAD-MORRISON MANUFACTURING COMPANY, Respondent and Appellant.

(Argued October 2, 1929; decided December 3, 1929.)

*Kenneth M. Spence, Kenneth E. Walser, Louis S. Weiss* and *Charles M. Travis* for plaintiff, appellant and respondent. The agreement was a general agreement to arbitrate, particularly since it provided that " the matter in dispute shall be settled by arbitration." The arbitrators, therefore, had power to make the award. (*Matter of Berkovitz*, 230 N. Y. 261; *Itoh & Co., Ltd.*, v. *Boyer Oil Co., Inc.*, 198 App. Div. 881; *The Knonprinzessin Cecilie*, 224 U. S. 12; *Tudickar* v. *Guardian Mut. Life Ins. Co.*, 62 N. Y. 392; *Matter of Wenger & Co.* v. *Propper S. H. Mills*, 239 N. Y. 199; *Cobb* v. *Dolphin Mfg. Co.*, 108 N. Y. 463; *Matter of Goldberg Enterprises, Inc.*, 130 Misc. Rep. 887; 222 App. Div. 729; *Matter of Buxton* v. *Mallery*, 245 N. Y. 337; *Matter of Smith Fireproof Constr. Co.* v. *Thompson-Starrett Co.*, 247 N. Y. 277; *Matter of Hines* v. *Ziegfeld*, 222 App. Div. 543; *Matter of General Footwear Corp.* v. *Lawrence Leather Co.*, 226 App. Div. 777; *Matter of Wheat Export Co.*, 185 App. Div. 723; 227 N. Y. 595; *Waite* v. *Barry*, 12 Wend. 377.) The " condition precedent " clause was inserted to prevent litigation, not to duplicate it and under such a clause arbitrators have power to make a pecuniary award. (*Scott* v. *Avery*, 5 H. L. Cas. 811; *Matter of Berkovitz* v. *Arbib*, 230 N. Y. 261; *D. & H. Canal Co.* v. *Pa. Coal Co.*, 50 N. Y. 250; *Seward* v. *City of Rochester*, 109 N. Y. 164; *Sweet* v. *Morrison*, 116 N. Y. 19; *Nat. Contracting Co.* v. *Hudson R. W. P. Co.*, 170 N. Y. 439; 192 N. Y. 209; *Meacham* v. *Jamestown, F. & C. R. R. Co.*, 211 N. Y. 346; *Red Cross*

*Line* v. *Atlantic Fruit Co.*, 264 U. S. 109.) Since the controversy concerning the power of the arbitrators to award damages was one " as to the construction " of the agreement, it was arbitrable, and the parties submitted to the arbitrators for settlement this very controversy. (*Matter of Kelley*, 240 N. Y. 74; *Itoh & Co., Ltd.*, v. *Boyer Oil Co., Inc.*, 198 App. Div. 881; *Matter of Prione* v. *Schermerhorn*, 237 N. Y. 16; *Christman* v. *Moran*, 9 Penn. St. 487; *Henderson* v. *Henderson*, 247 N. Y. 428; *Farmer* v. *N. L. Assn.*, 138 N. Y. 265; *Reed* v. *Chilson*, 142 N. Y. 152.) The Appellate Division rightly dismissed defendants' appeal from the order directing the arbitrators to appoint a time and place for hearing proof. (*Hooper* v. *Beecher*, 109 N. Y. 609; *Wood* v. *Richardson*, 91 Hun, 332; *Bloom* v. *Nat. United Benefit Savings Co.*, 81 Hun, 120; 152 N. Y. 114; *Matter of O'Brien*, 145 N. Y. 379; *Matter of Hosiery Mfrs. Corp.* v. *Goldston*, 238 N. Y. 22; *Raff* v. *Koster, Bial & Co.*, 38 App. Div. 336; *Bolles* v. *Scheer*, 225 N. Y. 118; *Collins* v. *McWilliams*, 185 App. Div. 712; *Roslyn Heights Land Co.* v. *Burrowes*, 22 App. Div. 540.) The order appointing a third arbitrator did not deprive defendant of any constitutional right. (*Weir* v. *Barker*, 104 App. Div. 112; *Kelso* v. *Kelly*, 1 Daly, 419; *Castle Creek Water Co.* v. *City of Aspen*, 146 Fed. Rep. 8; *State Reserve Bank* v. *Swift & Co.*, 32 Fed. Rep. [2d] 590; *Matter of Berkovitz* v. *Arbib*, 230 N. Y. 261; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Meacham* v. *Jamestown, F. & C. R. R. Co.*, 211 N. Y. 346; *Matter of Bullard Co.* v. *Grace Co.*, 240 N. Y. 388; *Berizzi Co.* v. *Krausz*, 239 N. Y. 315; *U. S. Asphalt Co.* v. *Trinidad Lake Petroleum Co.*, 222 Fed. Rep. 1006.) Even if the order appointing a third arbitrator was erroneous it was not void, and as it was made in a separate proceeding which is to be further enforced in this proceeding it cannot be attacked collaterally herein. (*Matter of Berkovitz* v. *Arbib*, 230 N. Y. 261; *Rhode Island* v. *Massachusetts*, 12 Pet. 657; *Matter of Hoisery Mfrs. Corp.* v. *Goldston*, 38 N. Y. 22; *Fauntleroy* v. *Lum*, 210 U. S. 230;

*Tonnele* v. *Wetmore*, 195 N. Y. 436; *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 173.)

*Edward F. McClennen* and *Arthur P. French* for defendant, respondent and appellant. The order directing arbitration did not authorize the arbitrators to decide the amount of the damages for a total breach of the contract. (*Matter of General Silk Importing Co.*, 200 App. Div. 786; 234 N. Y. 513; *Matter of Bullard Co.* v. *Grace Co., Inc.*, 240 N. Y. 388; *Hasbrouck* v. *N. Y. Central R. R. Co.*, 202 N. Y. 363; *Atwood* v. *Walker*, 179 Mass. 514; *The Atlanten*, 252 U. S. 313; *Dodds* v. *Hakes*, 114 N. Y. 260; *Smith Fireproof Const. Co.* v. *Thompson-Starrett Co.*, 247 N. Y. 277; *Young* v. *Crescent Development Co.*, 240 N. Y. 244; *Somerset Borough* v. *Ott*, 207 Penn. St. 539; *Matter of Collishaw*, 211 App. Div. 809; *Van Cortlandt* v. *Underhill*, 17 Johns. 405; *United States* v. *Farragut*, 22 Wall. 406.) The arbitration statute of New York did not and could not confer jurisdiction on its courts to compel performance in New York or in Massachusetts of an agreement made in Massachusetts to arbitrate in Massachusetts. (*Berkovitz* v. *Arbib*, 230 N. Y. 261; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Atlantic Fruit Co.* v. *Red Cross Line*, 5 Fed. Rep. [2d] 218; *The Silverbrook*, 18 Fed. Rep. [2d] 144; *Danielson* v. *Entre Rios Rys. Co.*, 22 Fed. Rep. [2d] 326; *Matter of Inter-Ocean Food Products, Inc.*, 206 App. Div. 426; *Matter of California Packing Corp.*, 121 Misc. Rep. 212; *Matter of Bullard Co.* v. *Grace Co.*, 240 N. Y. 388.) The defendant's agreement in Massachusetts to arbitrate in Massachusetts before a third arbitrator chosen by two arbitrators did not bind the defendant to arbitrate before an arbitrator not so chosen but appointed by a New York court. (*Smith Fireproof Const. Co., Inc.*, v. *Thompson-Starrett Co.*, 247 N. Y. 277; *Matter of Bullard Co.* v. *Grace Co., Inc.*, 240 N. Y. 388.)

*Julius Henry Cohen, Kenneth Dayton* and *Burton A. Zorn* for Chamber of Commerce of the State of New York et al., *amici curiæ.* The inclusion of the condition precedent clause in the agreement would seem to be direct evidence that the parties had the determination of damages by the arbitrators specifically in mind. (*Matter of Goldberg Enterprises, Inc.,* 130 Misc. Rep. 887; 222 App. Div. 729; *Matter of Young* v. *Crescent Development Co.,* 240 N. Y. 244; *Matter of Wenger & Co.* v. *Propper S. H. Mills,* 239 N. Y. 199.) The arbitration clause gives the arbitrators the authority to determine whether it authorizes an award of damages. (*Matter of Kelley,* 240 N. Y. 74; *Willesford* v. *Watson,* L. R. 8 Ch. App. Cas. 473; *Matter of Bullard Co.* v. *Grace Co.,* 240 N. Y. 388.)

CARDOZO, Ch. J. By contract dated May 25, 1922, Mead-Morrison Manufacturing Company, a Maine corporation, agreed to sell to Bear Tractors, Inc., a New York corporation, 500 tractors to be manufactured according to specifications and to be delivered in installments. There was an arbitration clause in the following form: " If for any reason any controversy or difference of opinion shall arise as to the construction of the terms and conditions of this contract, or as to its performance, it is mutually agreed that the matter in dispute shall be settled by arbitration, each party to select an arbitrator, and the two so selected to select a third, and the decision of the majority of such arbitrators given after a full hearing and consideration of the matter in controversy shall be final and binding upon the parties, and a condition precedent to any suit upon or by reason of any such controversy or difference. The cost of such arbitration shall be paid by the party against whom the majority of such arbitrators render such decis'on." The contract was closed in East Boston, Mass., and there the tractors were to be manufactured and delivery was to be made.

Bear Tractors, Inc., the buyer, became bankrupt in

May, 1924. Two years had then passed since the making of the contract, but of the 500 tractors only part had been received, and these after they were due according to the schedule for deliveries. Seller and buyer each laid the blame upon the other. A controversy having thus arisen as to the performance of the contract, the trustee in bankruptcy made demand that it be settled by arbitration. Each of the parties nominated an arbitrator. The two so selected were unable to agree upon a third. The deadlock, if not broken, would have made the settlement abortive. In this impasse, the trustee moved the court that it designate a third arbitrator in accordance with the statute (Arbitration Law, § 4; Consol. Laws, ch. 72). The seller appeared generally, and opposed the granting of the petition. The chief ground of its resistance was that the arbitration clause should be interpreted as providing for an arbitration in Massachusetts, and nowhere else. The objection was overruled, and the prayer of the petition granted. A third arbitrator was designated by the court to act with the same force and effect as if named in the contract, and the parties were directed to proceed to arbitration before the tribunal thus established. Upon appeal to the Appellate Division, the order was affirmed without opinion (215 App. Div. 759). A motion for leave to appeal to this court was made and denied.

There followed a long contest with twenty-seven hearings, thousands of pages of testimony, and hundreds of exhibits. At its close a majority of the arbitrators filed a report to the effect that the seller had made default in the performance of the contract, and that its default had brought about the bankruptcy of the buyer with a loss of all the capital invested in the enterprise. The capital thus lost, excluding moneys not invested in reliance on the contract, was fixed in the report at $849,006.76. The award was for that amount with the costs of the proceeding.

From the judgment entered on the award there was an

appeal to the Appellate Division by the seller, the defendant in the arbitration. The Appellate Division held by a divided court that in respect of a separable provision the award was in excess of the powers of the arbitrators. Buyer and seller, plaintiff and defendant, had been directed to proceed to arbitration in accordance with the contract. The powers of the arbitrators were thus measured by the contract, and did not extend to controversies beyond the terms of the submission. There was power to determine the fact of performance or nonperformance by one party or the other. There was no power to assess the damages resulting to the buyer's business by reason of the breach. The judgment was, therefore, modified by striking out the award of damages, and as modified affirmed.

Cross-appeals are now before us. The seller, the defendant in the arbitration, is dissatisfied because the award has been allowed to stand as an adjudication of its fault. The buyer, the plaintiff in the arbitration, is dissatisfied because the damages, if there have been any, must be assessed and recovered through proceedings in the courts.

(1) The appeal by the defendant is a challenge to the order directing arbitration. The challenge must be heeded even now if the order is merely void, an assumption of unlicensed power. The award can be no stronger than the prop on which it rests. The challenge comes too late, however, if power being present, there has been merely error in the use of it (*Fauntleroy* v. *Lum*, 210 U. S. 230, 235; *Marin* v. *Augedahl*, 247 U. S. 142, 149; *Wagner Co.* v. *Lyndon*, 262 U. S. 226, 231). An order for the specific performance of an agreement to arbitrate a controversy is one that finally determines a special proceeding (*Hosiery Manufacturers Corp.* v. *Goldston*, 238 N. Y. 22, 25, 26). The proceeding thus ended is not a part of the arbitration that is thereby set in motion. It is subject to direct review as a separable controversy.

Like any other final order, the mandate, unless void, is not assailable collaterally.

Two reasons are advanced by counsel for the seller why the order has collapsed for defect of jurisdiction.

The order, it is said, is void, because the parties to the contract in agreeing to arbitrate their differences had in view an arbitration in Massachusetts, and not performance somewhere else. Whether this was their meaning was, however, a question of construction, to be determined like any other question of construction by the judge receiving the petition. Jurisdiction was not dependent upon his determining it correctly. We must distinguish between the place of performance in respect of manufacture and delivery and the place of performance for the settlement of differences. The contract was to be performed in Massachusetts to the extent that the things to be sold were to be there manufactured and delivered. The conclusion does not follow of necessity that the remedy prescribed for the settlement of differences was to be sought in the same forum. At common law, general contracts of arbitration, though not specifically enforcible, were not held to be illegal. This is seen from the fact that in case they were broken there might be a recovery of damages (*Matter of Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 261, 271; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 121). The statute of New York does not bring the contract into being, but adds a new implement, the remedy of specific performance, for its more effectual enforcement. This remedy may lawfully be extended to contracts of manufacture made in Massachusetts and there to be performed, unless it is one of the terms of the arbitration clause, implied if not express, that the arbitration shall proceed n a particular locality. Express restriction there is none in the contract now before us. Whether one is to be implied is a question of intention to be determined in the light of context and occasion. That is what was done. The court in the discharge of its

judicial function was called upon to declare the implications of the promise. We do not say at this time that the determination was free from error. Enough for present purposes that it is not to be ignored as void.

A second objection, more perplexing, is urged now for the first time. The order, it is said, is void, in so far as it appoints a third arbitrator, not nominated by the other two, but designated by the court. The effect of such an order, we are told, is not merely to give specific performance in New York of a contract to arbitrate made in Massachusetts: the effect is to nullify the contract by exacting a form of arbitration inconsistent with the promise. The parties promised to submit to the decision of two men chosen by themselves and of a third to be chosen by the two. They said nothing in the contract as to the choice of a third if the two could not agree. The statute of New York to the effect that in the event of a lapse for this or other cause a third arbitrator or an umpire may be designated by the court is binding in respect of contracts made in our State or in contemplation of our laws. It is then read into the contract as an implied term of the engagement. To read it into contracts made in other States and without reference to our laws, is something very different. The law of the forum tells us whether the remedy for the breach of an agreement shall be specific performance or damages. The law of the place of contract defines the content of the agreement upon which the remedy shall operate. A State is without power to modify by its statutes the terms, express or implied, of contracts made in other States in contemplation of their laws. The case may be supposed of an agreement made in Boston that a controversy shall be arbitrated by the Chamber of Commerce of that city, with the express provision that in no event shall there be arbitration by any one else. If the law of Massachusetts refuses to permit the appointment of a substitute, the law of New York may not modify by statute the content of the

promise, and designate a substitute in the teeth of the agreement. The defendant would have us hold that this is what was done.

We think the argument is fallacious in assuming as a premise that there has been nullification of a contract under the compulsion of a statute rather than enforcement of the contract by discarding the subordinate and preserving the essential.

A helpful analogy may be found in contracts for the sale of land or for the renewal of leases at a price or a rental to be fixed by appraisers appointed by the parties. The method of selection may fail, and yet the court may give effect to the dominant intention through the agency of appraisers chosen by itself and subject to its scrutiny (*Mutual Life Ins. Co.* v. *Stephens*, 214 N. Y. 488, 495). Nice distinctions must then be drawn between a method of selection that is an auxiliary incident and one so wrought into the substance, so much a part of an organic whole, as to be accounted of the essence (*Castle Creek Water Co.* v. *City of Aspen*, 146 Fed. Rep. 8, 12; *Kaufman* v. *Liggett*, 209 Penn. St. 87; *Grosvenor* v. *Flint*, 20 R. I. 21; *Kelso* v. *Kelly*, 1 Daly, 419; *Weir* v. *Barker*, 104 App. Div. 112; *State Reserve Bank* v. *Swift & Co.*, 32 Fed. Rep. [2d] 590; *Dinham* v. *Bradford*, L. R. [5 Ch. App.] 518; Fry on Specific Perf. [6th ed.] §§ 355 to 364). The line of division is often shadowy and doubtful.

Contracts to submit to arbitration must answer to like tests, elusive though they be. There may be a dominant intention to arbitrate at all events, the machinery of selection being merely modal and subordinate. If so, the failure of the means will not involve as a consequence the frustration of the end. Equity will give specific performance of the principal engagement with variations of method appropriate to the facts. "It is the privilege of a Court in such circumstances and it is its duty to come to the assistance of parties by the removal of the impasse and the extrication of their rights" (*Cameron* v. *Cuddy*,

L. R. [1914] App. Cas. 651, 656). On the other hand, the promise to arbitrate may be so wedded to the means that the failure of the one will be the destruction of the other.

We are not required to determine whether there was error in the ruling that the means were in this instance subordinate and incidental rather than indispensable and primary. We are to determine merely this, whether there was a question of intention exacting for its answer the application of the judicial mind, the comparison and appraisal of analogies and precedents. If so, the determination, however erroneous, is proof against attack, unless challenged by direct review (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 306). The separating line between nullity and error is not an easy one to draw. If a court were to order arbitration under the mere impulse of a desire to settle a controversy expeditiously and cheaply, reciting, however, in the order that no contract to arbitrate had been made by the contending parties, its determination would be void, for power in such circumstances would be lacking altogether (*Vallely* v. *Northern Fire Ins. Co.*, 254 U. S. 348, 353; *Yamashita* v. *Hinkle*, 260 U. S. 199; *United States* v. *Walker*, 109 U. S. 258, 266). On the other hand, if a court were to find the existence of such a promise upon insufficient evidence, or were to enlarge through misconstruction the scope of a submission, an award dependent upon such an order could not be treated as a nullity (*Fauntleroy* v. *Lum, supra*). The question like so many others is one of proportion and degree.

With this line of approach, the pathway becomes visible. We assume in favor of the defendant that it is possible to phrase an arbitration clause with a method of selection so transparently essential as to leave no room whatever for the process of construction. This might be so, for illustration, if there were a promise to arbitrate through a named person, and no one else (cf. *Matter of Inter-Ocean Food Products, Inc.*, 206 App. Div. 426).

Here, on the contrary, promise and intention are not so free from uncertainty that construction is impossible. In the forefront of the clause is the statement of the dominant purpose that controversies of a given order shall be settled by arbitration. What follows may be figured, at least with a show of reason, as incidental and subsidiary. The error, if it be assumed, is not so utterly indefensible, so free from the possibility of genuine contest and debate, as to be equivalent to defect of power. If contracts to arbitrate had been subject to specific performance at common law, no one would be likely to urge that under a contract such as this a decree subordinating a method of choice to a supposed dominant intention could be disregarded as a nullity. The result is no different now that specific performance has its basis in the statute. There is significance in the form of order that was upheld by this court in *Matter of Berkovitz* v. *Arbib & Houlberg, Inc.* (*supra*), and by the Supreme Court of the United States in *Red Cross Line* v. *Atlantic Fruit Co.* (*supra*). Provision was made in each case for the appointment of an umpire to be designated by the court, though the contracts of arbitration made before the adoption of the statute called for an appointment upon the nomination of the arbitrators. True, the point was not urged in those cases any more than it was in this that as to contracts antedating the statute the choice must adhere to the form exacted by the parties. Even so, the orders as entered are pregnant with the assumption that the means might be varied in adaptation to the end. If there was error in the assumption, we think it was not so gross in either case that the decree became a nullity.

We have considered at such length the validity of the order to proceed to arbitration for the reason that if not binding upon us now as *res judicata,* it may not be held binding under the rule of *stare decisis.* A denial of a motion for leave to appeal is not equivalent to an affirmance of the order thus withdrawn from review. It does

not give to the order the value of a precedent. Not infrequently relief is refused in the exercise of discretion, for the test in many cases is the promotion of substantial justice (Const. art. VI, § 7, subd. 5; Civ. Prac. Act, § 588, subd. 5). The ruling, too, is summary. Motions for leave to appeal have the careful consideration of all the judges of the court, yet they lack the authority that attaches to a decision with all the aid of argument. In this very case, there was no suggestion on the motion for leave to appeal that the order to arbitrate, if otherwise proper, might be held to be improper because it departed from the mode of selection established by the contract. There was no hint that any question of constitutional law was involved, and indeed if such a question had been involved and had been seasonably urged, an appeal would have followed as of right. These considerations emphasize the need of holding that a refusal to take jurisdiction of a cause has not the force of an affirmance after jurisdiction has been taken. Appellate Divisions and trial courts are at liberty, if they please, to give to such a refusal some measure of significance, as a token, though indecisive, of the impressions of this court. They are not bound thereby as by an authoritative precedent. This is the rule in the Supreme Court of the United States upon the denial of applications for writs of certiorari ( *United States* v. *Carver*, 260 U. S. 482, 490; *Bankers' Trust Co.* v. *Bowers*, 23 Fed. Rep. [2d] 941; Dobie on Federal Procedure, p. 863). It is the only safe rule if the doctrine of adherence to precedent is to be kept within reasonable limits.

(2) The appeal by the plaintiff is next to be considered.

Parties to a contract may agree, if they will, that any and all controversies growing out of it in any way shall be submitted to arbitration. If they do, the courts of New York will give effect to their intention. A submission so phrased, or in form substantially equivalent, does not limit the authority of the arbitrators to an adjudica-

tion of the breach. It is authority to assess the damages against the party in default (*Matter of Gen. Footwear Co. v. Lawrence Leather Co.*, 252 N. Y. 577).

There is nothing in the law, however, that exacts a submission so sweepingly inclusive. The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. Courts are not at liberty to shirk the process of construction under the empire of a belief that arbitration is beneficent any more than they may shirk it if their belief happens to be the contrary. No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness. Our own favor or disfavor of the cause of arbitration is not to count as a factor in the appraisal of the thought of others.

The clause to be interpreted is instinct with tokens of a purpose to encompass the submission with limitations and conditions. It does not say that any and all controversies growing out of the contract shall be settled by arbitration, though the plaintiff would have us hold that its effect is nothing less. The submission is to be confined to controversies or differences of opinion as to " the construction of the terms and conditions " of the contract, and controversies or differences as to the " performance " of the contract. Each of these phrases is to be weighed in association with the other. Dismemberment may be necessary in aid of the process of analysis, but in the end there must be a synthesis that will bring the severed parts together.

The need for such a synthesis is ignored in plaintiff's argument, or at least thrown into the shadow. What is emphasized is the provision for arbitration of any controversy touching the performance of the contract, as if it stood by itself, without relation to the context. The words, extracted from their setting, are said to include by implication the consequences of non-performance through all the chain of jural causes. But this is to

ignore the transforming power of association for phrases as for men. The words " as to its performance " do not stand in isolation. If they had been understood to cover everything, there would have been no sense in providing for arbitration as to the meaning or construction of the " terms and conditions." The controversies envisaged must have fallen short in some degree of the sum total of the possible. " Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension " (*Surace* v. *Danna*, 247 N. Y. 18, 21). Color and content will vary with the setting.

We think there was no intention to clothe the arbitrators with power to settle every difference having its genesis in the contract. Their function was more modest. Questions might arise as to the meaning of the contract or the plans and specifications. The arbitrators were to give the answer. Questions might arise as to the per-. formance of covenants and conditions where there was no doubt as to the meaning. Again the arbitrators would answer. If performance had failed in part, there would be questions very often as to the measure of the failure, which would lead to an inquiry as to the diminution in value of the subject-matter of the contract, the worth of what had been done when compared with that omitted. Here again we assume that the arbitrators were expected to estimate the deficiency, and if the price would overpay, to determine the abatement, as upon a claim for recoupment. Reparation to that extent would follow as an incident to the power that had been given them to declare the measure of performance.

They undertook to do much more. They did not limit themselves to fixing the value of what had been done as compared with that omitted according to the practice in recoupment (*Mondel* v. *Steel*, 8 M. & W. 858). They charged the dilatory seller with consequential damages of nearly a million dollars on the ground that the effect of the delay was to plunge the buyer into ruin. The rule

has long been settled that recoupment in its proper sense does not include a claim for damages purely consequential, but is limited to an allowance for diminution in the value of the subject-matter (*Mondel* v. *Steel, supra,* at pp. 870, 872; Williston on Contracts, vol. 3, § 1464). We think this was the extent of the power of the arbitrators under the submission now before us. We do not mean to suggest that under other forms of submission, they would be hampered by distinctions between recoupment and counterclaim (*Seibert* v. *Dunn,* 216 N. Y. 237). We go no farther than to hold that the distinction answers in this instance to restrictions that may reasonably be supposed to have been in the minds of the contracting parties, though " recoupment " and " counterclaim " may have had no place in their vocabulary. The clause is similar in its form to one that is common in building contracts where the architect or engineer is empowered to settle any differences as to the meaning of the contract or as to the performance of its covenants. We think there would be surprise and consternation in the trade if under cover of such a clause an architect or engineer could hold a contractor liable for the bankruptcy of the owner, and assess the damages accordingly. The precedents are apt that no such power is conferred (*Somerset Borough* v. *Ott,* 207 Penn. St. 539; *Young* v. *Crescent Dev. Co.,* 240 N. Y. 244). The case of *Heyworth* v. *Hutchinson* (L. R. [2 Q. B.] 447), much relied on by the plaintiff, holds nothing to the contrary. Wool was guaranteed to be similar to sample, with a provision that if any dispute arose it should be settled by the selling broker. This was held to include a power to fix the abatement from the price, if the wool, the subject of the dispute, was found to be inferior. Nothing in the judgment gives color to the suggestion that consequential damages might have been added for the ruin of the business.

We conclude that the award departs from the submission, and is void to that extent. In thus restricting

its scope, there is no attempt to revise the judgment of the arbitrators within the limits of their competence. It is not a question whether the damages awarded proceed from the default so directly and certainly that the plaintiff might have recovered them if he had been suing in the courts. The judgment of the arbitrators within the lines of the submission is not to be impeached for misconception of the law. It is rather a question whether the damages are of such a nature that arbitrators so commissioned may consider them at all. One has only to compare this clause with sample clauses quoted in the briefs of counsel for the plaintiff to see how far it falls short of many standard forms that were readily available. Typical of such forms is that of the Chamber of Commerce of this State. It calls for arbitration of " any dispute arising under, out of, or in connection with or in relation to this contract." The parties to this controversy had no thought that they were saying the same thing.

There remains one other term of the agreement that points the same way. This is the provision to the effect that an award by the arbitrators shall be a condition precedent to a remedy in the courts. Under the rule at common law as established in this State, it was not a bar or defense to a remedy in the courts that the action was maintained in breach of a contract for the settlement of future differences by recourse to arbitration (*Pres., etc., D. & H. Canal Co.* v. *Penn. Coal Co.*, 50 N. Y. 250; *United States Asphalt Ref. Co.* v. *Trinidad Co.*, 222 Fed. Rep. 1006). The operation-of this rule might, however, be avoided if an award as to specific differences was stated in the contract to be a condition precedent to the existence of a cause of action (*Pres., etc., D. & H. Canal Co.* v. *Penn. Coal Co., supra; Meacham* v. *Jamestown, etc., R. R. Co.*, 211 N. Y. 346). The condition was ineffective if it extended to all differences, with the result that the grip of the courts would be loosened altogether (*Meacham* v. *Jamestown, etc., R. R. Co., supra; Matter of*

*Berkovitz* v. *Arbib & Houlberg, Inc., supra,* at p. 275).
Courts there were indeed, notably the courts of England,
that had developed a more liberal doctrine as to the effect
of a condition precedent, however broad and unrestricted
(*Hamlyn & Co.* v. *Talisker Distillery,* L. R. [1894] App.
Cas. 202; Cohen, Commercial Arbitration and the Law,
ch. 16). We are to presume, in the absence of evidence
to the contrary, that the rule in Massachusetts at the mak-
ing of this contract was the common-law rule as estab-
lished in New York (cf. *Miles* v. *Schmidt,* 168 Mass. 339;
*Lewis* v. *Brotherhood Acc. Co.,* 194 Mass. 1, 3, 4). To hold
that the contract covered disputes of every kind would be
to render it inoperative in the State where it was made.
To limit its extension is to give it efficacy and power.
The parties will be presumed, if the construction is uncer-
tain, to have had in mind the meaning that would cause
their purpose to prevail.

Weighing these considerations in all their cumulative
force, we are brought to the conclusion that the Appellate
Division did not err in modifying the judgment by strik-
ing out the award of damages. It is a very easy thing
for contracting parties to provide in a few words for a
general arbitration if they are minded so to do. They
are not to be trapped by a strained and unnatural con-
struction of words of doubtful import into an abandon-
ment of legal remedies, unwilled and unforeseen.

(3) An appeal from an intermediate order, certified to
us by the Appellate Division, has yet to be considered.
During the pendency of the arbitration, an order was
made by the Supreme Court at Special Term to the effect
that some of the witnesses should be examined in New
York and some in Massachusetts. The defendant makes
the point that there was no power in the court to direct
the course of justice in another jurisdiction. The point
might be important if the defendant had refused to par-
ticipate in any examination of the witnesses not conducted
in New York. That is not what it chose to do. Appar-

ently the direction to proceed in Massachusetts was made for its convenience. Whether this is so or not, it submitted to the order, examining the witnesses and foregoing an appeal.

What it seeks to do now is to bring up the order for review in connection with the judgment, though the time for such an appeal, if separately taken, has long ago expired. The practice is not permissible unless the intermediate order is so related to the judgment that it has "necessarily" affected the final result (Civ. Prac. Act, § 580). So intimate a conjunction is lacking in this case. The fact that the testimony of some witnesses was taken in Massachusetts, rather than in New York, did not necessarily affect the outcome of the trial. There is no reason to believe that the award would have been different if the place of hearing had been changed. These considerations led the Appellate Division to hold that the intermediate order was not subject to review. We think it did not err in dismissing the appeal (*Bolles* v. *Scheer*, 225 N. Y. 118; *Bloom* v. *National U. B. S. & L. Co.*, 152 N. Y. 114; *Roslyn Heights L. & I. Co.* v. *Burrowes*, 22 App. Div. 540; *Raff* v. *Koster, Bial & Co.*, 38 App. Div. 336.)

(4) The record brings up a question as to the proper form of judgment. The defendant makes the point that the form adopted by the Appellate Division does not conform to its opinion in that provisions unrelated to the breach, and material, if at all, only as affecting the quantum of the loss, were left untouched in the award, which must, therefore, be modified again. We think the criticism is just. By the twelfth subdivision of the judgment, it is found that " the failure of Mead-Morrison Manufacturing Co. to manufacture and deliver tractors according to the terms and conditions of the contract resulted in the bankruptcy of Bear Tractors, Inc., caused a ruination of its enterprise and pecuniary loss." The declaration of these consequences has no place in the

award. In all likelihood the Appellate Division left it there through inadvertence. It should be dropped lest it occasion embarrassment hereafter.

The order of the Appellate Division dismissing the appeal from the intermediate order should be affirmed; and the first question certified answered " no." It is unnecessary to answer the other questions.

The judgment of the Appellate Division modifying and as modified affirming the judgment entered on the award should be further modified by striking out the first paragraph of the twelfth subdivision thereof, and as so modified affirmed, without costs to either party.

CRANE, J. (dissenting in part). With part of the opinion in this case I am in accord. Arbitration being the remedy in case of a breach of a contract, that remedy could be enforced in accordance with the Arbitration Law of the State of New York in the same way as other legal remedies would follow the procedure peculiar to this State. Thus a question triable before a jury in Massachusetts might be triable before a court without a jury in New York or *vice versa*. The parties having contracted to submit their differences to arbitration, each to appoint an arbitrator, and these two an umpire, the courts of New York, having jurisdiction of the parties, could appoint the third arbitrator, in accordance with the Arbitration Law, when the two selected had failed to do so. This was but a piece of machinery, a part of procedure to arrive at a result contracted for by the parties. I, therefore, concur in so much of the opinion of the chief judge as deals with this point.

The arbitration clause reads as follows: " If for any reason any controversy or difference of opinion shall arise as to the construction of the terms and conditions of this contract, or as to its performance, it is mutually agreed that the matter in dispute shall be settled by

arbitration, each party to select an arbitrator, and the two so selected to select a third, and the decision of the majority of such arbitrators given after a full hearing and consideration of the matter in controversy shall be final and binding upon the parties," etc. These business contracts are not drawn with the precision of deeds or judgments. We must read them with that liberality of meaning which attaches to the laconism of business men. Controversies and differences arising out of the terms and conditions of the contract have reference to the meaning of the contract. This covers everything within its four corners. The performance of the contract does not arise out of its construction or meaning but out of its execution. The difference between the parties to this litigation arose out of the latter, that is, out of the failure to perform. Default was conceded. The dispute was over the damage. The question of loss arising from non-performance, in my judgment, was within the arbitration clause as above quoted, and became one of the matters for arbitration. To this extent I cannot follow the opinion.

This, however, does not lead me to a reversal of the Appellate Division and an affirmance of the award. Although the evidence is not before us in the record, we have the report of the arbitrators, or the majority of them, from which it appears that they exceeded their authority in disposing of the defendant's money. The contract called for the manufacture of five hundred tractors according to design represented by drawings and specifications to be furnished. The profits which might have been made in the sale of these tractors would be the ordinary measure of damages. Conceding that the arbitrators were not confined to the rigid rules of law and that they might consider losses consequent upon the expenditure made in preparation for the sale of the tractors, the housing of them or other like liabilities incurred — yet it is beyond all reason to charge up to

the failure to get five hundred tractors the loss of the capital of the business. This is entirely too speculative as the capital might have been lost or impaired as well through the delivery of the tractors and the expense of disposing of them, as through failure to get them. For this reason I think the court was justified in setting aside the award.

Entertaining, as I do, however, this view of the case, my conclusion would be that the matter should be sent back for a new hearing before the arbitrators. To submit the question of breach of contract to arbitration, leaving the question of damages to be recovered in an action at law, is to multiply litigation not to lessen it; to complicate our procedure not to simplify it; to burden the business man not to relieve him. Arbitration has been heralded as a ready and speedy relief from the intricacies and delays of the law. We should, if possible, avoid making it another barrier to the settlement of disputes. The answer I know is that the parties have so contracted, to which I reply that to give the word " performance " a narrow interpretation leading to these results is to construe the contract contrary to and not in accordance with the intention of the parties.

With this brief statement of my views I favor modifying the order of the Appellate Division by sending this controversy back for the ascertainment of damages.

LEHMAN, KELLOGG and O'BRIEN, JJ., concur with CARDOZO, Ch. J.; CRANE, J., votes in memorandum to remit the controversy for the assessment of damages; POUND and HUBBS, JJ., vote to reverse the judgment so far as appealed from by the plaintiff and to reinstate the award.

Order affirmed and judgment accordingly.