■ In the Matter of the Arbitration between JEROME GOLENBOCK, as Surviving and Liquidating Partner of the Law Firm of GOLENBOCK & KOMOROFF, Respondent, and IRVING KOMOROFF, Appellant.

MEMORANDUM BY THE COURT. It is not clear from the agreement that the parties intended that the named individual and no one else was to arbitrate their differences. Nor, on the other hand, is it clear that arbitration generally, was their object. In the circumstances it would seem advisable to remit the matter to Special Term for the purpose of having testimony taken as to the intention of the parties.

Order appealed from should be modified accordingly. Settle order.

BOTEIN, J. P. (dissenting). It is a truism that is not blunted by constant repetition that the duty of the courts is to enforce the agreements of parties in accordance with their original intention. Where the parties have failed to make provision for unforeseen contingencies, the courts may resort to certain rules of construction or apply statutes that will tend to fill the interstices in the agreement so as to carry out the basic intention of the parties. Hence, in agreements where an intention to arbitrate is clearly paramount and the method of choice or the identity of the arbitrator is incidental or implemental, the courts will apply section 1452 of the Civil Practice Act and designate a substitute arbitrator so that the intention of the parties can be effectuated. That section should not be invoked, however, to frustrate the basic intention where the identity of the arbitrator agreed upon is a vital provision of the contract. "There may be a dominant intention to arbitrate at all events, the machinery of selection being merely modal and subordinate. If so, the failure of the means will not involve as a consequence a frustration of the end. Equity will give specific performance of the principal engagement with variations of method appropriate to the facts. * * * On the other hand, the promise to arbitrate may be so wedded to the means that the failure of the one will be the destruction of the other." (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284, 295–296.)

The instant case appears to be one in which the identity of the arbitrator was "so much a part of an organic whole, as to be accounted of the essence". (*Matter of Marchant* v. *Mead-Morrison Mfg. Co., supra,* p. 295.) The parties were seeking to resolve the controversies which had arisen upon the dissolution of their partnership. However, they were not willing to submit to the award of just any arbitrator, but of a particular person only. The matters to be resolved were somewhat sensitive and the parties were critically concerned about

the personality, fairness and expertise of the chosen arbitrator. They deliberately shunned the stereotyped clauses of the form books and the printed forms and provided: "Whereas, the parties desire dissolution of said partnership and certain disputes have arisen between them * * * It is hereby agreed * * * all matters in difference whatsoever between them are referred to the award, order and final determination of Harry Kane, Esq. * * * as Arbitrator, in accordance with the Civil Practice Act ".

Respondent does not suggest that the clause "in accordance with the Civil Practice Act " contained in the submission has any meaning other than its obvious one — that when and if Harry Kane rendered his award it would be enforced pursuant to the provisions of the Civil Practice Act. The agreement to arbitrate and hence to forego the traditional remedies afforded by the courts should not be extended by implication, for only a strict construction of the agreement will prevent the imposition of a result which the parties never contemplated (*Matter of General Silk Importing Co.*, 200 App. Div. 786, 792).

It may be that in most agreements to arbitrate future differences the dominant intent of the parties is to arbitrate — preferably with the person or persons named in the agreement, but to arbitrate in any event. Parties who adopt an arbitration clause when entering into a venture or transaction that may breed future differences have woven the arbitration concept into the very fabric of their venture right at the start of their dealings. They must be aware of the many contingencies that could arise over an indeterminate period of time to render the named arbitrator unavailable for service. When parties are alerted by such an awareness it might not be unreasonable to hold that if they do not restrict the arbitration to the named arbitrator in clear and specific terms, they intend to proceed to arbitration at all events with some substitute.

Such an intention cannot be distilled as readily from an agreement to arbitrate a dispute which has already arisen. The parties are thinking of the resolution of an immediate dispute and do not contemplate the hazards and contingencies of the future. Seeking an immediate settlement of their existing dispute, they will usually agree to abide by the decision of a person in whom they have confidence. If the disputants are businessmen, they will most likely choose an arbiter because of his know-how and reputation in the trade. The thought of abiding by the decision of some stranger selected by a judge who may be unfamiliar with their problems, with a waiver of important rights of review and other safeguards implicit in legal proceedings, would probably never enter their minds.

In most instances agreements to resolve existing controversies are made to avoid the formalism, delay and expense attendant upon litigation and the necessity of hiring lawyers. We should not impose upon parties in the very act of eschewing legal formalism a requirement that they expressly disavow any intention to have a substitute arbitrator named pursuant to section 1452 of the Civil Practice Act. Such legalism is more appropriate to the formal contracts drafted by batteries of expert lawyers than to the usually informal submission of existing controversies to designated persons by parties seeking swift adjustment of their dispute. We should decline to appoint a substitute for the person agreed upon unless the willingness of the parties to submit to such a substitute is reasonably apparent. "No one is under a duty to resort to arbitration unless by clear language he has so agreed " (*Matter of Lehman* v. *Ostrovsky*, 264 N. Y. 130, 132). (See, also, *Matter of Writers Guild of Amer. East* [*Prockter Prods.*], 1 N Y 2d 305, and cases therein cited.)

The order designating a substitute arbitrator should be reversed and the motion denied.

Rabin, Cox and Bergan, JJ., concur in Memorandum by The Court; Botein, J., dissents and votes to reverse and deny the motion, in opinion.

Order modified in accordance with memorandum and, as so modified, affirmed. Settle order on notice.