In the Matter of the Arbitration between NORMAN KLINES, Respondent, and JACOB A. GREEN et al., Appellants.

In the Matter of the Arbitration between DAVID COLEMAN, Respondent, and JACOB A. GREEN et al., Appellants.

Second Department, November 5, 1956.

*Sol A. Liebman* and *William Kerwick* for Brewster Homes, Inc., and others, appellants.

*Sol A. Liebman* for Jacob A. Green, appellant.

*Sidney M. Spero* and *Edwin N. Charnin* for respondents.

MURPHY, J.   An agreement was entered into on January 17, 1952 between respondent Klines and appellants Green, Brewster Homes, Inc., Kingston Homes, Inc., Thayer Homes, Inc., Oakley Homes, Inc., and Jordan Homes, Inc.   It relates to the stock

interest of Klines in the corporate appellants (except Brewster Homes, Inc.) and provides for their dissolution. The arbitration provisions in the agreement read:

" 4. That all claims, demands, disputes, controversies, differences or misunderstandings between the parties hereto, arising out of or by virtue of the stockholdings of Norman Klines in said corporations and the question of what the profits of said corporations are, are hereby referred to Hyman Green of 87-11 168th Street, Jamaica, Queens County, New York, and Jacob J. Fass, of 170 Broadway, Manhattan, New York City, as arbitrators for hearing and decision pursuant to and in accordance with the arbitration laws of the State of New York.

" 5. That each of the parties hereto shall stand to, abide by and perform the decision, award, order and/or orders that may be made by said Hyman Green and Jacob J. Fass, as arbitrators, and that a judgment of the Supreme Court of the State of New York may be entered hereon in any County of the State of New York."

A similar agreement was entered into on the same date between respondent Coleman and appellants Green, Brewster Homes, Inc., Rutgers Homes, Inc., and Waterbury Homes, Inc. This agreement contains arbitration provisions identical with the two paragraphs quoted above from the Klines agreement.

Hyman Green resigned as an arbitrator on January 12, 1956. The respondents requested the appellants to consent to the appointment of an arbitrator to take his place. The request was refused. The orders herein appealed from grant respondents' applications for appointment of a successor to Green.

The appellants contend that no vacancy exists and that, in any event, the agreements render the court powerless to name a substitute. They assert that the agreements show that the parties intended that only the two named arbitrators were to serve as such in combination, or individually if one or the other be unavailable.

If the parties intended that the two named arbitrators, and they alone, were to resolve all controversies, such a provision could readily have been inserted in each agreement (cf. *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284, 296).

It is provided in the agreements that a dispute shall be referred to the named arbitrators " pursuant to and in accordance with the arbitration laws of the State of New York." If there be no method of naming or appointing an arbitrator, or if for any reason there shall be a lapse in the naming of an arbitrator or in filling a vacancy, then the court, upon application, shall appoint an arbitrator who shall act with the same

force and effect as if he had been named in the contract (Civ. Prac. Act, § 1452). The resignation of Green created a vacancy. The court correctly appointed a successor to Green.

In *Ballas* v. *Mann* (82 N. Y. S. 2d 426) a named single arbitrator was not available when needed. There was no provision for appointment of a substitute. We approve the reasoning of the court in making the appointment, viz. (p. 427):

" The contract here provides no method of naming or appointing an arbitrator in case of the inability of Shalon to act, and it thus seems to me that there is such a lapse as authorizes the court to name an arbitrator; and in Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 294, 169 N. E. 386, 389, it was said that that statute is read into contracts made in this State as an implied term of the engagement.

" But even if the statute be not here applicable, I still think that a proper construction of the contract is that the intention to arbitrate is the dominant intention, the personality of the arbitrator being an auxiliary incident rather than the essence, and that frustration of that dominant intention is not to be permitted merely because the precise method of accomplishing that intent has become impossible; and under those circumstances the court may give effect to the dominant intention through the agency of an arbitrator chosen by itself. Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 294, 295, 169 N. E. 386, 389, 390."

The minority holds that a hearing should be held. No hearing has been requested or even proposed by appellants, who do not oppose arbitration but suggest that the remaining arbitrator, who is accountant for both the individual appellant and the corporate appellants, should act as sole arbitrator. This attitude of appellants negates any contention that the combined knowledge and personalities of the named arbitrators are essential factors in the agreement. Furthermore, it was conceded on oral argument that the question of whether an arbitrable issue exists in the present controversy is not germane to this appeal.

The orders should be affirmed, with $10 costs and disbursements.

NOLAN P. J., and BELDOCK, J. (dissenting). This record fails to establish clearly the dominant intent of the parties under the agreements, that is, whether the dominant intent was to resort to arbitration in any event, making subordinate or incidental the identity of the arbitrators and the method of selecting them, or whether the dominant intent was to resort to arbitration only through the designated arbitrators, making

their ability and willingness to act a condition precedent to the arbitration. Under the circumstances a hearing should first be held to enable the Special Term to take proof and to make an appropriate finding as to such intent (*Matter of Golenbock* [*Komoroff*], 2 A D 2d 742).

UGHETTA and HALLINAN, JJ., concur with MURPHY, J.; NOLAN, P. J., and BELDOCK, J., dissent and vote to reverse the orders and to remit the proceedings to the Special Term, with memorandum.

Orders affirmed, with $10 costs and disbursements.