Jacob J. Schwabtzwald, J.
In this proceeding relating to the right to arbitrate, Peelle Company, a New York corporation, hereinafter referred to as “ Peelle ”, moves for an order vacating a demand for arbitration served upon it and for an order enjoining and restraining the arbitration attempted; Pan American World Airways, Inc., also a New York corporation, hereinafter referred to as “ Pan American,” cross-moves for identical relief. Western Steel Erection Company, a foreign corporation apparently having its origin in the State of Oklahoma, and hereinafter referred to as “ Western ”, appearing specially for the purpose of its motions, cross-moves in opposition to the Peelle and Pan American motions for an order setting aside and dismissing their motions on the grounds that the respondent Western is a person not subject to the jurisdiction of the court as well as the fact that the court lacks jurisdiction of the subject matter.
The genesis of the controversy revolves around the following:
In September, 1956 Peelle entered into a contract with Pan American pursuant to which. Peelle undertook, as contractor, to furnish all materials and perform all of the work necessary in erecting hangar doors for Pan American at the New York International Airport. To accomplish this work Peelle retained a number of subcontractors, one of which was Capitol Steel & Iron Company. Capitol, in turn, retained as one of its subcontractors Western, the party seeking this arbitration. It is undisputed that there is no contract between Peelle and Western or Pan American with Western. As alleged by Western in its demand for arbitration seeking such arbitration in the State of Oklahoma, it sustained damages due to increased costs of labor, etc., resulting from delay occasioned by the action of Pan American. Both demands were apparently served upon Peelle and Pan American by mail in the State of New York.
Western, by its demand for arbitration, specifically seeks to obtain for itself the rights created by the subcontractor’s clause *566 as well as the arbitration clause in the contract entered into between Peelle and Pan American which read as follows:
£ ‘ Article 37. Relations of Contractor and Subcontractor. The Contractor agrees to bind every Subcontractor and every Subcontractor agrees to be bound by the terms of the Agreement * * *
ct Article 40. All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions * * * of. the American Institute of Architects.”
The contract is silent and does not expressly state where the arbitration therein provided is to take place. Predicated on the afore-mentioned provisions and lack of a designated locale for the arbitration, Western demanded that the arbitration take place in the State of Oklahoma and has requested the American Institute of Architects in Oklahoma City to initiate such proceeding.
Assuming arguendo, for the purpose of testing jurisdiction, that Western upon entering into its contract with Capitol became, in effect, a party entitled to the rights under the basic contract between Peelle and Pan American, it then must assume and become part of the entire contract in any legal construction that may be placed upon its terms. It may not merely take advantage of its favorable provisions but also must be bound by any unfavorable ones. It may not pursue the contractual right to arbitrate without assuming the burden of arbitrating in the proper forum or the place of arbitration-intended by the parties to the contract.
As there was no expression in the contract of an intention to arbitrate in any specific forum whether such intention can be implied is a question to be determined in the light of context and the surrounding circumstances of the contract and, like any other question of construction, by the Judge before whom the issue is presented (Matter of Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284). Within the foregoing proscription we have the categorical expressions by the parties to the contract that any arbitration was to take place in the State of New York. Bolstering such affirmative statement, the contract was negotiated and executed in New York, related to construction work in New York, provided that the contract was to be. construed in accordance with the laws of the State of New York, and the only two parties to the contract are corporations having their principal place of business in the State of New York. Under the circumstances, and placing a reasonable construction upon the *567 intent of the parties relating to the site of arbitration, it is the court’s view that the parties clearly intended that any dispute arising therefrom was to be arbitrated in the State of New York (Matter of Republique Francaise [Cellosilk Mfg. Co.], 124 N. Y. S. 2d 93, revd. 284 App. Div. 699 but affd. 309 N. Y. 269 ; Matter of P. Beiersdorf & Co. (Duke Labs.], 94 N. Y. S. 2d 18, affd. 277 App. Div. 768, affd. 301 N. Y. 707). All of these factors being present, Western must be construed to have impliedly consented to arbitrate in New York and to the jurisdiction of the New York courts with respect to questions relating to such arbitration. To allow -the arbitration to proceed in the State of Oklahoma would be analogous to the situation where the tail would be wagging the body.
However, a much more serious problem is presented as to whether Western has any right to arbitrate. The very foundation of our statutory arbitration (Civ. Prac. Act, art. 84) is that such a proceeding can originate only in two ways: (1) by contract; or (2) by voluntary submission. It is axiomatic that in motions to compel arbitration the court is not authorized to consider the merits of the controversy but only may examine into (1) whether there is a contract to arbitrate, (2) whether there is a dispute, and (3) a refusal to arbitrate (Matter of Carey [Westinghouse Elec. Corp.], 6 A D 2d 582 ; Matter of Crossett [Mount Vernon Housing Auth.], 275 App. Div. 1051).
From the face of the demand for arbitration, it can be seen that Western invoked the arbitration solely under the terms of the contract to which it was not a party. Its rights, if any, under the circumstances, can only come into being if the parties to the contract (Peelle and Pan American) provided for such eventualities. By the provisions of the contract, the rights, remedies and obligations created and governed thereunder extend only to Peelle, Pan American and subcontractors as defined in article 1(e) of the contract. The term “ subcontractor ”, as defined in the contract, includes only those having a direct contract with the contractor and includes one who furnishes material worked to a special design according to the plans or specifications of this work. Upon the facts presented herein, not only does Western fail to fall within the ambit of the definition of “ subcontractor ” but in its very demand for arbitration it admits that it did not have a direct contract with Peelle and did not furnish the material as required in the contract so as to be considered a'tssubcontractor. The demand for arbitration clearly shows that Western contracted with Capitol and that Capitol was the sole party with whom Western was in privity.
*568 It'is clear, that Western has attempted to assume a position which, is nonexistent, that the term- “ subcontractor” should apply to. a sub-subcontractor despite . the. clear' and explicit language of the ' contract .defining the term sub-contractor. Article' 37 of the contract refers only to the relations of the contractor and subcontractor and only to those parties who are in privity with each other.
Even if one was to assume Western had a right to seek arbitration, the demand fails to set forth any provisions of the contract concerning which a dispute has arisen. It is apparent from the demand that Western alleges a claim for damages it suffered because it was delayed in the performance of the work for which it contracted with Capitol to perform. The delay claimed was a delay in the commencement of Western’s work. The only' provision relating to delays are those which caused damage to. Pan American, and for which only Pan American can assert- a claim. The' contract does not contain any provision under'which a sub-subcontractor can claim damage for delay. The demand for arbitration fails to allege the essential prerequisite of a dispute founded upon a breach of the contract referable to arbitration.
Accordingly, the motion of Peelle and the cross motion of Pan American are granted and the cross motions of Western denied.
(On reargunieiit, June 19, 1961.)
On prior motions relating to the right to arbitrate and cross motions seeking dismissal of those motions for lack of jurisdiction over the respondent “Western”, the court granted the motion of “ Pan American” and “Peelle” vacating “ Western’s ” demand for arbitration and. denied the cross motions relating to the question of jurisdiction.
“Western” by means of a stipulation entered into between the attorneys for the respective parties now moves for a reargument and a renewal of the motions of ‘ ‘ Peelle ’ ’ and “ Pan American ” relating to “ Western’s ” right to arbitrate. It does not seek similar relief with respect to its cross motions testing the jurisdiction of the court over it.' This application for a renewal is based upon additional affidavits and exhibits which were not before the court on the original motions.
The granting of the “ Peelle ” and “ Pan American ” motions was predicated on the proposition that “ Western ” was not a party to the.original contract between “Peelle” and “Pan American ” and did not fall within the definition of the 'term “ subcontractor ” as provided for in the main contract.'
*569 “ Western ” attempts to circumvent the effect, of the court’s decision by now advocating that “ Peelle ” requested “ Western ” during the course of the construction to perform, certain work which “ Peelle ” agreed to personally pay for and that “Peelle” and “Western” had carried on various conversations and communications relating to the. subject of the- proposed arbitration; that by these actions “ Western ” became.a subcontractor within the purview of the contract.
The court upon a re-examination of the contract adheres to its original determination, and the submission of the additional affidavits and exhibits does not in any way alter that conclusion. The term “ subcontractor ” as defined in the contract includes only those having a direct contract with the contractor. It is undisputed that neither “ Peelle ” nor “ Pan American ” over entered into a subcontract with “ Western ” and the additional work requested by “ Peelle ” indicated by the submitted exhibit fails to create such a relationship.
Article 37 referring to the relations of contractor and subcontractor clearly states: . “ This does not apply. to minor subcontracts.” It appears that the intent and purpose of the contract was to permit a major subcontracting of part of the work specified by the main contract and by so doing: create the relationship of contractor and subcontractor, but was not to apply and create such relationship where minor subcontracts or additional work of a minor nature outside of the specifications and general conditions of the major contract Avere contracted for. “Western’s ” oavu order blank and upon Avhich it relies to create a direct contract with “ Peelle ” is specifically labeled 1 ‘ Requisition for work not in our Contract ’ ’ and relates either to a minor repair or a slight additional feature requested by “ Peelle ”. It is. the court’s vieAv that such request cannot be considered a subcontract to clothe “ Western ” with the legal dignity of a subcontractor as defined in the contract.
The letter dated February 23, 1961 from “ Peelle ” and addressed to its subcontractor “ Capitol” enclosing a copy of the standard form of arbitration procedure was for the use of “ Capitol ” in arbitrating the claim of “ Western ” and did not create a subcontractor’s status between “Peelle” and “Western”.
Accordingly the court holds that “• Western ” has again failed to establish the very crux to a right to arbitrate, i.e., the existence of a contract. In reaching its present determination the court repeats that portion of its prior decision relating to the issue of the right to arbitrate with the same force and effect as if fully set forth herein and denies “Western’s” present application.