In the Matter of the Arbitration of and Concerning Certain Matters in Difference between PINE STREET REALTY COMPANY, INC., Appellant, and NIK COUTROULOS, Respondent.

First Department, November 6, 1931.

*Joseph M. Proskauer* of counsel [*J. Alvin Van Bergh* with him on the brief; *Frueauff, Robinson & Sloan,* attorneys], for the appellant.

*Alfred Ekelman* of counsel [*Henry G. Schackno* with him on the brief; *Alfred Ekelman,* attorney], for the respondent.

McAvoy, J.   The Pine Street Realty Corporation was the owner of premises 76 Pine street, New York city, and the respondent Nik Coutroulos was a tenant therein.   The premises had been leased to the tenant in November, 1927, for a term of twenty-one years, which commenced in February, 1928.   The rental was fixed at $3,000 per annum for the first ten years and $4,000 for each of the remaining eleven years.   The lease provided in paragraph 31 as follows: " In case the Tenant shall be, through no fault of his own, removed from the premises as a result of a breach by the Landlord of the covenant of quiet possession, it is agreed that the Landlord will pay to the Tenant the sum of $5,000 as liquidated damages, but the Tenant shall have no other or further claim against the Landlord by reason of such removal or breach."

This lease was subsequently recorded in the office of the register of New York county and about a year after the recording the appellant, Pine Street Realty Company, Inc., commenced to assemble property on Pine and Pearl streets for the erection of a large office building of some sixty-three stories in height.   Among the parcels acquired in that plottage were the premises which were the subject of the lease between one Titus and the tenant, respondent.

There had been a communication between the attorneys for the former owner, Titus, and the tenant, Coutroulos, which attempted to construe the meaning of the clause known as paragraph 31 of the lease, fixing liquidated damages for a breach by the landlord of the tenant's covenant of quiet possession.   The attorneys of the landlord said in that letter: " The paragraph in our opinion does not give the landlord the right to remove the tenant except

when the landlord himself has been deprived of possession through defect in title or otherwise."

At the time that the Pine Street Realty Company, Inc., acquired this parcel of land from Titus, it had no knowledge of this letter, which passed between the landlord's attorneys and the tenant, nor was it recorded as supplementary to the lease's provisos. In May, 1930, the Pine Street Realty Company, Inc., filed plans which showed that the building contemplated was to extend along the whole front of the plot on Pine street. The building then at 76 Pine street was a brick structure over seventy years old. It had a party wall on the west with 74 Pine street and on the east with 171 Pearl street. These parcels were not jointly owned at the time of the execution of the lease to Coutroulos by Titus.

In June, 1930, the demolition of 74 Pine street began. The party walls were not demolished but the adjoining buildings were removed. It was discovered that prior to the removal of the adjoining buildings 76 Pine street was not a safe structure, and when the adjacent buildings had been partially removed, the superintendent of buildings of the borough of Manhattan notified the owner, Pine Street Realty Company, Inc., that the building must be taken down and removed or made safe and secure, by doing the proper shoring and bracing and removing such defective portions of the walls as would carry out the directions of the notice.

While Coutroulos' attorney was informed of the unsafe notice and stated that Coutroulos would take care of it, the superintendent of the owner decided that the owner should go upon the premises to do the shoring and the shorers there employed on the demolition work were told to shore so as to comply with the building department's notice. This shoring was done, but after completion thereof a survey was made by three competent building experts, who reported that the building was unsafe and dangerous and that it had settled and disintegrated and recommended that the building be demolished to the sidewalk level.

On June twenty-sixth this survey was pinned on the door of 76 Pine street and the following day an order was made in the Supreme Court directing demolition to the sidewalk level and the owner, Pine Street Realty Company, Inc., applied for leave to comply therewith, but the wrecking did not start, although orders for demolition were given, for two or three days thereafter, because the tenant had not yet moved from the premises.

Subsequent to the beginning of the wrecking on the early morning of July second, the tenant secured an order which sought to have the demolition order modified to provide for such demolition to the first floor instead of to the sidewalk. This order contained

a stay against demolishing the building below the second floor, but was conditioned upon the proviso that it would apply only if the petitioner and his employees or agents and all customers vacate the premises.

Upon the return day of this order, the parties decided to arbitrate their difference and subsequently signed an arbitration agreement to carry this proposal into effect. The demolition was concluded and the Pine street building was extended over the parcel which had formerly contained the building known as 76 Pine street.

It was the contention of the tenant in the arbitration proceeding that the owner had no right to remove the adjoining building; that the shoring was not properly done and caused the building to become unsafe; that the clause in the lease as to liquidated damages was limited to the understanding contained in the letter of the former owner and applied only in case of eviction by paramount title; that this ouster and deprivation of rights under the lease and wrongful eviction stood outside of the limitation clause of the lease and that profits of which he was deprived through interference with his possession were recoverable as in an action *ex delicto*.

We think that none of these contentions can be maintained on a judicial review of an arbitration proceeding. Where parties select an arbitrator to pass upon a controversy arising between them, his determination, both as to law and as to the facts, is not reviewable as though the matter were conducted according to the law of the land in a judicial court. Mere errors of judgment found no ground upon which to set his determination aside. He has merely to keep within the submission of the controversy and avoid fraud, corruption or misconduct affecting his award, to render it impregnable. It becomes final excepting where grounds exist as specifically provided in section 1457 of the Civil Practice Act for vacating an award. Errors, mistakes, departures from strict legal rules, are all included in the arbitration risk and " perverse misconstruction " includes none of these in its category. (See *Matter of Wilkins*, 169 N. Y. 494, 496.)

The questions raised as to the applicability of the limitation clause, as to the measure of damages, where there is alleged malicious interference or deliberate wrongdoing on the part of the landlord, which in some cases our courts have held permit the tenant " to pass the covenant by and recover as for a tort " (*Egan* v. *Browne*, 128 App. Div. 185), cannot be considered. Arbitration's principal claims to merit as a means for the settlement of disputes are promptness and finality. These would be destroyed if questions of fact and of law could be reviewed as though on appeal from judicial

findings. We think the order below was not warranted and should not stand.

The order appealed from should be reversed, with costs, and the motion to confirm the award granted, with costs, and the motion to vacate the award denied.

FINCH, P. J., MERRELL, MARTIN and SHERMAN, JJ., concur.

Order reversed, with costs, and the motion to vacate the award denied, and the motion to confirm the award granted, with costs.