PUBLISHERS' ASSOCIATION OF NEW YORK CITY, on Behalf of BROOKLYN DAILY EAGLE, Plaintiff, *v.* NEW YORK TYPOGRAPHICAL UNION No. 6, Defendant.

Supreme Court, Special Term, New York County, June 7, 1938.

*DeWitt, Van Aken & Nast* [*MacDonald DeWitt* of counsel], for the plaintiff.

*Talley & Lamb* [*Alfred J. Talley* and *James A. McKaigney* of counsel], for the defendant.

*Spence, Windels, Walser & Hotchkiss* [*Paul Windels* of counsel], for the Brooklyn *Daily Eagle*.

COTILLO, J. Although entitled as in an action, this is a special proceeding under article 84 of the Civil Practice Act brought by New York Typographical Union No. 6 to confirm the award of a board of arbitrators functioning under a contract between the union and various newspapers constituting the Publishers' Associa-

tion. The matters arbitrated were the subject of a dispute between the union and the Brooklyn *Daily Eagle*, a member of the Publishers' Association, growing out of the acquisition of the Brooklyn *Times-Union* by the Brooklyn *Daily Eagle* through the medium of a corporation formed by it for that purpose. The proposed plan of the Brooklyn *Daily Eagle* to publish the *Eagle* and the *Times-Union* in the same plant but as separate newspapers brought forth a ruling from the union that its rules required the composition work of the *Times-Union* to be done by members of the *Times-Union* chapel and not by members of the *Eagle* chapel, a " chapel " being the group or unit of union journeymen engaged in composition work in the publication of each newspaper employing union members. The union also ruled that, under the terms of the agreement between members of the Publishers' Association, which includes the Brooklyn *Daily Eagle*, all matter used in each newspaper must be separately produced, or, if exchanged, must be reproduced under the provisions of the contract which applied to separately owned newspapers published in the same plant. The Brooklyn *Daily Eagle* protested both rulings and the dispute was submitted to arbitration. The majority of the board found in favor of the union on both propositions, holding (1) that the *Eagle* and the *Times-Union* were separately owned and operated newspapers; (2) that the union was within its rights in requiring the maintenance of separate chapels and the reproduction of all material for each paper and forbidding the exchange of such material without reproduction; and (3) that members of the *Times-Union* chapel should be reimbursed for the time lost by them due to the fact that, upon orders from the union, members of the *Eagle* chapel did the composing work for the *Times-Union* pending the hearings and the decision by the arbitrators. The award does not fix the amount of such money damages nor in words state by whom it shall be paid, although from the papers it appears that the arbitrators intended to direct the Brooklyn *Daily Eagle* to make such reimbursement. Two of the five arbitrators dissented from the entire award.

In its moving papers the union asks that the award be confirmed and the Publishers' Association be directed to pay the wages lost by the *Times-Union* chapel members, which is stated therein to amount to $66,083.02. The Publishers' Association does not specifically object to the confirmation of sections (1) and (2) of the award, but does oppose a confirmation of the award against it for money damages. It moves to vacate or to modify section (3) and to bring in as a necessary party hereto the Brooklyn *Daily Eagle*. The latter has also moved for leave to intervene and to become a

party to this proceeding, and to vacate or to modify or correct the award.

Upon the papers before me it is clear that the Publishers' Association acted in this matter for and on behalf of the Brooklyn *Daily Eagle*, and that the controversy was exclusively between the *Eagle* and the union. The association had no interest in the matter save that of adjusting the differences between one of its members and the union. It neither employed nor discharged the members of the *Times-Union* chapel. It is an unincorporated association of newspaper publishers, formed, among other purposes, to adjust labor disputes between its members and the union. The contract under which arbitration was had, known as the collective bargaining agreement, was made between the members of the association and the union. Pursuant to its terms, the association, on behalf of its member, the Brooklyn *Daily Eagle*, participated in the arbitration. The award relating to the maintenance of separate chapels and reproduction of material for each newspaper affects and applies only to the *Eagle*. Neither the association nor any member thereof save the *Eagle* is interested therein. If any award could be made herein against the association for the money damages sought to be recovered, the association would have a clear right to recover over against the *Eagle*. For these reasons, the Brooklyn *Daily Eagle* is a proper and necessary party to this proceeding and its motion for leave to intervene, and the Publishers' Association's motion to bring it in as a party hereto are granted. (Civ. Prac. Act, §§ 192, 193.)

For the same reason the motion of the Publishers' Association to modify or correct section (3) of the award as to it must be granted. As made, this section leaves in doubt the party required to reimburse the members of the *Times-Union* chapel. It is to be presumed that the intent of the arbitrators was to require payment by the *Eagle* but in an amount not fixed or ascertainable from the award. The present motion seeks to impress the liability upon the Publishers' Association in the sum of $66,083.02. How this amount was arrived at is not shown by the moving papers. Confirming the award as made would leave the identity of the party liable in doubt. With the Brooklyn *Daily Eagle* formally before the court, it is only proper to hold that if any liability exists for payment of the wages lost by the members of the *Times-Union* chapel, it is an obligation of the *Eagle* and not of the association. The latter's motion to modify or correct the award is, therefore, granted under the provisions of section 1462-a of the Civil Practice Act to the extent of relieving the Publishers' Association from any

liability under section (3) of the award, and the union's motion to confirm this portion of the award as against the association is denied. (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y.·284.)

There remains for consideration the grounds urged by the *Eagle* for vacating or modifying the award. It asks first that the entire award be vacated by reason of the alleged partiality of one arbitrator toward the union. This charge is leveled against Dean Charles E. Clark, of Yale Law School, who was chosen as chairman after the four arbitrators acting under the contract provisions had been unable to reach a decision. It is asserted that Dean Clark's partiality is established by his decision in favor of the union's contentions on all points, which decision is claimed to be clearly wrong, and by his action in making known his views in advance of the formal decision. Neither of these matters establishes partiality. Even if it be held that Dean Clark erred both on the facts and on the law, it does not follow that this was the result of favoritism rather than honest error of judgment. It cannot be said that there is no basis for the views adopted by the majority of the arbitrators, even though this court might have reached a different result. The charge of partiality is not sustained either on the ground of erroneous decision or premature publication thereof. (*Matter of Pine Street Realty Co.* v. *Coutroulos*, 233 App. Div. 404, 407.)

The *Eagle* further asserts that the award must be vacated because the arbitrators exceeded their powers, decided matters not submitted to them, and so imperfectly executed their powers that a final and definite award has not been made. This ground relates to section (3), awarding money damages in an unspecified amount for the time lost by the *Times-Union* chapel, and presents a serious obstacle to the confirmation of the award as against the *Eagle*. (Civ. Prac. Act, § 1462, subd. 4.)

The agreement under which this arbitration has proceeded is the contract entered into between the members of the Publishers' Association and the union on July 1, 1936, for the two-year period ending June 30, 1938, known as the collective bargaining agreement. By its terms the newspaper publishers belonging to the association agreed to employ only members of the union to perform journeymen's work in their composing rooms and the union agreed to furnish as many competent workmen as might be required at the scale of wages and under the conditions set forth in the contract. The parties agreed that all complaints by either should receive prompt acknowledgment and attention from the other, and every effort made to promptly adjust the same. To accomplish this end, a code of procedure was inserted in the contract creating a joint

standing committee consisting of two representatives of the association and two of the union, and the parties agreed to refer to this committee all questions of construction of the agreement or any violation thereof. In the event of any disagreement as to the interpretation or enforcement of the agreement, conditions prevailing prior to the dispute are to be maintained until the controversy has been disposed of. The aggrieved party is required to address the other in writing, *clearly setting forth the matters in dispute.* If the joint standing committee is unable to render a decision by a majority vote, they shall " constitute themselves into a local arbitration board by adding a fifth member, who shall be chairman of the board " and the decision of a majority shall be final and binding. The code expressly provides that such board " shall have jurisdiction only over controversies *properly and specifically referred to it*, and its decisions cannot abridge the fundamental rights reserved by and to both parties to this instrument."

In December, 1936, it was announced that the Brooklyn *Eagle* was about to acquire the *Times-Union*, a Brooklyn paper not a member of the Publishers' Association. It was stated that publication of the *Times-Union* would be continued as a separate newspaper, but produced and published in the *Eagle* plant. The union thereupon notified the *Eagle* that if it published the *Times-Union* in the *Eagle* plant, the work done in the *Eagle* composing room must be performed by members of the *Times-Union* chapel. The *Eagle* protested that this decision of the union was a violation of the collective bargaining agreement, thus bringing into issue the interpretation of that contract. Thereafter, and on January 15, 1937, the union demanded that printed matter interchanged between the two papers be reproduced as required by paragraph " 31 " of the agreement in the case of newspapers " not owned by the same individual, firm or corporation and published in the same establishment." Under this provision of the agreement, one of two newspapers, separately owned, could use matter composed by the other, but was obligated to reproduce such matter within four days thereafter. The *Eagle* protested this ruling as inapplicable to the *Eagle* and the *Times-Union*, and these two matters were referred to the joint standing committee. Such committee being unable to render a decision by a majority vote, Dean Clark was selected as the fifth member and chairman, and he and the four members of the joint standing committee constituted the local arbitration board provided for by the contract to finally determine the controversies " *properly and specifically referred to it* " under sections (f), (g) and (h) of the Code of Procedure set forth in the collective bargaining agreement. Arbitration by this board was commenced

on or about April 2, 1937. Beginning on February 1, 1937, the *Eagle* published the *Times-Union* from the *Eagle's* plant, the composing room work being done by members of the *Eagle* chapel of the union. This, of course, resulted in the loss of employment by members of the *Times-Union* chapel. On June 6, 1937, the *Eagle* discontinued publication of the *Times-Union*. No award had been made at that time, but the chairman had announced that the decision to be rendered would be against the *Eagle*.

The award as made not only passed upon the right of the union to insist upon the composing work of the *Times-Union* being done by members of the *Times-Union* chapel and not by members of the *Eagle* chapel, and the reproduction of any matter exchanged by the two newspapers, but also held that " the discharge of employees of the *Times-Union* on February 1, 1937, was a violation of the provisions of the contract requiring the maintenance of conditions prevailing prior to the dispute until its decision. Such violation should be corrected by reimbursement to such employees as though the chapel of the *Times-Union* had been continued on February 1, 1937, as provided in paragraph 1 hereof, and further in accordance with the general provisions of the contract."

The *Eagle* asserts that this provision for reimbursement of the former employees of the *Times-Union* was in excess of the powers of the arbitrators, not having been submitted to them for decision, and is such an imperfect execution of such powers that a final and definite award upon the matter submitted was not made.

The Code of Procedure, section (c) requires that " the aggrieved party shall address the other party in writing, *clearly setting forth the matters in question*." The Publishers' Association, after the interchange of letters and protests between the union and the *Eagle*, above referred to, requested *the board of arbitrators* to pass upon the alleged violation of the collective bargaining agreement by the union in requiring two chapels to be maintained and reproduction of matters exchanged between the two papers. The Publishers' Association requested the *typographical union* to direct the *Eagle* chapel to remain at work during the arbitration proceeding, and the union did instruct that chapel to set any copy given to them whether for the *Eagle* or the *Times-Union*, until the determination of the arbitration, with which instructions the members of the *Eagle* chapel complied.

It is clear that the question of compensation of members of the *Times-Union* chapel was not specifically referred to the arbitrators in the manner prescribed by the contract. It may be regarded as an incident of the transactions between the *Eagle* and the union,

but it was never submitted to the arbitrators or there litigated. The contract under which the arbitration was had is very specific in reserving rights not therein expressly granted. The parties thereto agreed that the arbitration board " shall have jurisdiction only over controversies *properly and specifically referred to it*, and its decisions cannot abridge the fundamental rights reserved by and to both parties."

The parties did not specifically refer the question of compensation to the arbitrators, nor did they offer any proof of the amount lost by reason of the discontinuance of separate chapels. The composition of matter for the *Times-Union* by members of the *Eagle* chapel was a matter adjusted between the union and the publishers without recourse to the arbitrators. The latter had no part in that arrangement. The fact that the arbitrators were unable to fix the amount of loss of wages clearly indicates that the matter was not litigated before them. It is not lawful for arbitrators to fix damages arising out of the matters submitted to them unless the issue of such damages is also specifically submitted. (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284.) Nor is it proper to award damages in an unspecified amount, or to permit the amount to be supplied by a stranger.

Even if within the scope of the arbitration, the arbitrators have so imperfectly executed their powers in connection with this phase of the proceeding that there has been and can be no final and definite award of damages within the requirements of section 1462, subdivision 4, of the Civil Practice Act. It is unfortunate that this matter was not specifically submitted, litigated and definitely passed upon, for it is one of substance and apparently within the express provisions of the agreement requiring the maintenance of the *status quo* pending disputes. The union complied with the contract requirements by directing the *Eagle* chapel to perform services which it contended should be performed by the *Times-Union*. Its action in so doing is to be commended, and it is to be regretted that the failure to specifically submit the claim for reimbursement as expressly required by the contract and the failure of the arbitrators to make a final and definite award renders it impossible to conclude this controversy without a new arbitration on this one matter.

It does not follow that the entire award must be vacated. Under section 1462-a of the Civil Practice Act, the court may modify or correct an award " where the arbitrators have awarded upon a matter not submitted to them, not affecting the merits of the decision upon the matters submitted." The award of damages for loss of wages, which was not submitted, may be eliminated without

affecting the decision requiring separate chapels and reproduction of exchanged material, which matters were specifically submitted. (*Matter of Marchant* v. *Mead-Morrison Mfg. Co. supra.*) The motion of *Brooklyn Daily Eagle* to *vacate* the award on the ground of partiality of an arbitrator and on the further ground that the arbitrators exceeded their powers is, therefore, denied, but its motion to modify the award by eliminating section (3) must be granted without prejudice, however, to the right of the union to have the matter of reimbursement for loss of wages of members of the *Times-Union* chapel arbitrated under the provisions of the contract.

The *Eagle*, acting under the provisions of the collective bargaining agreement to which it is a party, caused to be submitted to arbitration the issue of separate chapels and reproduction of exchanged matter. These questions were litigated at length and exhaustively briefed. Their decision depended upon whether the two newspapers were in the same or separate ownership within the purview of the agreement. This involved the construction or interpretation of that contract, and the board of arbitrators, by a majority vote has found that within the meaning and intent of the contract provisions, the papers were separately owned and the demands of the union justified. While this conclusion may be criticized, " the judgment of the arbitrators within the lines of the submission is not to be impeached for misconception of the law." (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. at p. 302.) " Errors, mistakes, departures from strict legal rules are all included in the arbitration risk." (*Matter of Pine St. Realty Co., Inc.,* v. *Controulos,* 233 App. Div. at p. 407.) I do not mean to infer that the decision was erroneous in law or fact, but merely that it cannot be reviewed here. Under section 1461 of the Civil Practice Act the award *must* be confirmed unless vacated or modified upon the grounds specified in sections 1462 or 1462-a, none of which are applicable here, save for the modification above directed. The award as so corrected and modified is, therefore, confirmed. Settle order in accordance with the foregoing upon notice to all parties appearing herein.