In the Matter of the Arbitration between DELAWARE COUNTY DAIRIES, INC., Appellant, and PERRY L. WHITE, Respondent.

MEMORANDUM BY THE COURT. In 1944, the petitioner and respondent purchased a small milk route serving Roxbury, Delaware County, the entire

purchase price being $750. Subsequently respondent erected a milk plant on real property owned by him which he equipped as a creamery and used in conjunction with the milk route. An award has now been made upon an arbitration proceeding in favor of respondent for $20,625, which includes the plant and the land upon which it stands. The arbitrators also filed an alternative award for $2,814 excluding the plant.

The judgment and order should be reversed on the law and facts and the award vacated. The court adopts the finding of $2,814 as to value of the route.

Judgment and order modified on the law and facts by substituting $2,814 for $20,625.

HEFFERNAN, J. (dissenting). Appellant owns and operates in the village of Roxbury, Delaware County, New York, a large modern milk plant for receiving, pasteurizing and bottling milk for sale in New York City and also for the manufacture of various milk products.

For some time prior to December, 1944, a concern known as Meredith Inn Dairy, Inc., had been supplying the inhabitants of the village with milk. There was general dissatisfaction with the quality of milk which the company furnished and also with the service which it rendered.

On December 12, 1944, appellant and respondent purchased from Meredith Inn Dairy, Inc., its milk route and its equipment which consisted of a single truck, for the sum of $750 each of the parties contributing one half of the purchase price and the title to the property being taken in the name of respondent. Respondent obtained a license from the Department of Agriculture of the State to operate the milk route.

In accordance with an agreement between the parties respondent purchased his supply of milk already bottled from appellant for which he paid it nine and one-half cents per quart and which he sold for thirteen cents per quart. He also bought from appellant cottage cheese, buttermilk, homogenized milk and light cream which he disposed of to his patrons. The average daily volume of sales at that time was 198½ quarts.

Because of lack of storage and the refusal of appellant to accept the return of unsold milk and to avoid the necessity of daily trips to appellant's plant respondent decided to build his own pasteurizing, bottling and storage plant which he did in 1946, at a cost of approximately $15,500. In the construction of the plant he utilized a garage owned by him and located on his property, the combined value of which was $2,000.

In the meantime he continued to purchase his raw milk from appellant and increased his sales to 290 quarts daily with a gross profit in excess of seven and one-half cents per quart.

At the time of the purchase of the milk route respondent and appellant entered into a written contract with respect thereto. The contract provided, among other things, that appellant should have the exclusive right to purchase the milk route " together with the good will thereof, and all rights and privileges appertaining thereto " if respondent should decide to offer the business for sale. In the event that respondent concluded to dispose of the business he obligated himself to give appellant written notice of such intention and the latter was to have ten days from the receipt thereof in which to exercise its option.

With respect to the purchase price and the method for its determination the contract provides:

" 3. That the purchase price of said business, the good will, rights and privileges appertaining thereto as and when the said option shall be exercised

by the Party of the Second Part [appellant] shall be the sum of Three Hundred and Seventy Five Dollars ($375.00), plus such additional sum as may be agreed upon by the parties as the fair and reasonable value of any increase in the volume of business done on said route as of the time of the exercise of the option over and above that volume of business done as of this date plus such other and further sum agreed upon by the parties as the fair and reasonable value of any physical assets that shall be taken over by the Party of the Second Part from the Party of the First Part [respondent] in connection with the exercising of this option; the total amount of consideration shall be determined within ten days after written notice is given by the Party of the Second Part of its intention to exercise this option and payment thereof shall be made within five days thereafter, and simultaneous with such payment the Party of the First Part, or in the event of his death, his executor or administrator, shall execute and deliver to the Party of the Second Part a full and sufficient bill of sale, assignment and all such other instruments as shall be necessary to effectuate the sale and transfer of the said business.

"4. That in the event the parties hereto shall be unable to agree within the ten day period as to the amount of the consideration to be paid as provided in the foregoing paragraph, then and in such event such amount shall be ascertained, fixed, and determined by arbitration within ten days thereafter, to-wit: each party hereto shall select one arbitrator and the two so chosen shall choose a third, and the three so chosen shall ascertain, fix and determine the sum, and the determination of a majority of such arbitrators made with or without hearing or notice shall be absolute and conclusive upon the parties hereto and such shall· be the consideration payable under this agreement, and shall be paid within five days after determination."

In April, 1947, respondent was offered $21,000 for the business, including the physical equipment such as the plant. He decided to sell and notified appellant accordingly. The latter decided to exercise its option but refused to take the pasteurizing plant. It contended that it was required to purchase only the good will of the business. Respondent refused to sell on that basis and appellant then resorted to the arbitration provisions of the contract.

Each of the parties selected an arbitrator and the Supreme Court nominated the third. The arbitrators met, took all the testimony offered by either party, examined the property in question, including the real estate and the milk plant after which they made a report and award. The arbitrator selected by respondent and the one named by the court joined in a determination which required appellant to take the milk route operated by respondent, together with all the physical assets used at the time of the exercise of the option, consisting of one Chevrolet truck, 4,000 bottles, 100 cases, a quantity of caps, 18 milk cans and the real property upon which was erected the milk plant used in connection with the operation of the milk route business, in which plant was installed a built-in milk cooler, bottle washer, separator, surface cooler, bottle capper, hand capper, milk pump, brine pump, dump tank, pump, filters and various supplies which real property was then described in the usual manner for inclusion in a deed.

The two arbitrators awarded respondent the sum of $20,625, to be paid by appellant which sum they determined to be the fair and reasonable value of the milk route business owned and operated by respondent on December 12, 1944, together with the good will thereof and all rights and privileges appertaining thereto plus the fair and reasonable value of any increase in volume of business done on said route as of the time of the exercise of the option over the volume

of business done on December 12, 1944, and plus the fair and reasonable value of the physical assets to be taken over by appellant from respondent in connection with the exercise of such option.

The award further provided that, in the event that the Supreme Court should determine that the two arbitrators were in error in the foregoing determination and that the plant and equipment should not be included in the award, then there should be awarded to respondent the sum of $2,814 which the arbitrators selected by appellant and the court determined to be the fair value of the milk route business plus the personal physical assets. It was further provided that the second finding and determination should apply only in the event that the Supreme Court should determine that the option did not require appellant to take the plant and equipment of respondent.

Respondent moved to confirm the award and appellant made a cross motion to vacate such award as made and to modify the same so as to direct payment only of $2,814.

The court confirmed the award made by the two arbitrators which required appellant to take the milk plant as well as the other property used in connection with the business and to pay respondent $20,625 therefor. The order also directed the entry of judgment in favor of respondent and against appellant for the amount of the award, with costs. From that order and judgment appellant has come to this court.

Courts are extremely reluctant to interfere with arbitration awards and will permit the same to be impeached only where the award is void, where there are unwaived objections rendering it voidable or where there has been fraud, misconduct or palpable or gross mistake or error (6 C. J. S., Arbitration and Award, § 103).

Unless there is some express restriction or reservation in the agreement of submission the arbitrators have power to decide on all questions of law as well as of fact which, either directly or incidentally, arise in the consideration or decision of the matters embraced in the submission, for, in the absence of such reservation, the parties are presumed to agree that everything, both as to law and fact, which is necessary to the ultimate decision, is included in the authority of the arbitrators. When in accordance with this, the power to decide all questions of law and facts exists, the arbitrators are not bound by any strict ruling of law or equity, but are free to do substantial justice between the parties, according to such principles as may seem to them best adapted to establish the right of the particular matter before them (6 C. J. S., Arbitration and Award, § 48).

The general rule is that errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. Nothing in the award relative to the merits of the controversy as submitted, however wrongly decided, is ground for setting aside an award in the absence of fraud, misconduct or other valid objections. An award will not be held invalid merely because unjust, inadequate, excessive or contrary to law (3 Am. Jur., Arbitration and Award, § 135; *Matter of Pine St. Realty Co.* v. *Coutroulos,* 233 App. Div. 404, motion for leave to appeal denied, 258 N. Y. 609; *Perkins* v. *Giles,* 50 N. Y. 228; *Halstead* v. *Seaman,* 82 N. Y. 27).

As a rule an award stipulated by the parties to be final will not be set aside unless it is clearly made to appear that there has been fraud by a party, or the arbitrators have mistaken their authority, departed from the submission, clearly misconceived their duties, acted upon some fundamental and apparent mistake,

or have been moved by fraud or bias (3 Am. Jur., Arbitration and Award, § 137).

Applying these general rules to the contract before us we are satisfied that it requires appellant to purchase the physical assets of the business as well as the intangible asset of good will. We must interpret this contract as it was understood by respondent, having for our guide "the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51; *Goldstein* v. *Standard Accident Ins. Co.*, 236 N. Y. 178.)

Certain provisions of the contract are very significant. If appellant exercised its option it agreed to take over the milk route together with the good will thereof and all rights and privileges appertaining thereto. This language is sufficiently comprehensive to include tangible as well as intangible property rights other than good will. In addition thereto appellant was required to purchase the physical assets of the business.

Appellant concedes that it was required to purchase the automobile, the bottles, cases and milk cans. Surely respondent must have intended when he made his contract that appellant would be required not only to take over this equipment but the rest of the physical assets such as the bottling and pasteurizing machinery and plant. The operation of a milk route in Roxbury is a monopoly. No other person or corporation can sell milk at retail there. The business cannot be conducted without any physical assets and hence if any physical assets were intended to be included in the sale then all such assets should be included. The optionee is given no right under the contract to select only what it chooses and reject the rest.

To adopt appellant's construction of the contract would be most inequitable. Respondent's investment in his plant would thereby be made practically worthless. It would leave him with a pasteurizing and bottling equipment plant on his hands having very little if any value if not used in connection with this particular retail milk business. To us it seems unreasonable and illogical to say that the truck, bottles, cases and caps should be regarded as a part of the milk route and that the pasteurizing and bottling plant should be excluded. The one is just as necessary as the other. The one is just as much an integral part of the business as the other. The contract required appellant to take over the physical assets, not merely those in use in December, 1944, when it made the contract, but all the physical assets in use when it exercised its option.

We have no hesitation in reaching the conclusion that the award is within the authority of the arbitrators. The contract states that they should determine the "consideration payable under this agreement" and that such determination "shall be absolute and conclusive upon the parties".

The order and judgment appealed from should be affirmed, with costs to respondent.

Hill, P. J., Deyo and Russell, JJ., concur in Memorandum by the Court; Heffernan, J., dissents, in an opinion in which Brewster, J., concurs.

Judgment and order modified, on the law and facts, by substituting $2,814 for $20,625.